RUE AND AL. ADMINISTRATOR OF RUE, v. RUE EXECUTOR OF RUE.

1. A contract so vague and unintelligible, that the intent of the parties cannot be ascertained with certainty, is void, and will not be enforced at law.

2. But the court will not declare a contract void for uncertainty, if they can upon the face of it find a definite meaning; and they will resort to proof of the circumstances and relation of the parties, and of the subject matter to fix a definite meaning on terms otherwise vague—and will add reject and transfer words and phrases when required for that purpose.

3. A contract by which A. "engages" to B. a farm, will be construed under circumstances a contract to transfer all the interest of A. in that farm, and will not be held void for not specifying estate.

4. A contract by A. "engaging" a farm to B. *or* that B. should have $1000 out of A's estate is not void for want of a specified time of performance. The death of A. ending the possibility of his performing it after, and the penalty payable *out of his estate* indicating his life as the term.

5. A contract must be stated in pleading according to its legal *effect*, or it will be a variance—and the breach must be as broad as the contract.   Alleging want of performance in a particular manner, to which performance is not limited by contract, not sufficient breach.

6. Whether a contract has in fact been abandoned by other arrangements between the parties, is a matter for the jury to determine.

This was an action of assumpsit brought in the Circuit Court of the County of Middlesex, on the following special agreement made by the defendant's testator, with intestate of plaintiffs.

"This is to certify that I engage to my son Isaac the farm which he now lives, and should Providence determine otherwise he is to receive of my estate, one thousand dollars—five hundred for the improvements made on the farm on which my son Joseph lives, and five hundred for money to be paid to Sarah Rue, widow of my deceased son. September twenty-seventh, 1822.

(Signed)      JOHN RUE."

The declaration contained in addition to the common counts, several special counts setting forth the agreement. In the first special count, after an inducement setting forth the consideration, &c., the contract is described as an agreement by which John Rue undertook and promised that he would. *by his last will and testament leave and devise* unto Isaac the farm in Lower Freehold, or *in case Isaac died before him*, that he would pay to him the said Isaac, his executors or administrators, the sum of $1000; and the breach alleged is *that Isaac·died before his father* John Rue, and therefore his administrators are entitled to receive the one thousand dollars.

In the third count it is described as an agreement by which John Rue undertook and promised that he would *by his last will and testament give and devise* unto Isaac the farm in Lower Freehold, or if in the course of Providence, it should happen otherwise, that then Isaac was to be paid after the death of John Rue by his executors, out of his estate, the sum of 1000 dollars; and the breach alleged is that John Rue *did not by his last will and testament give and devise the said farm to Isaac*, but that he did give and devise it to his son Joseph Rue.

In the sixth count it is described as an agreement by which John Rue undertook and promised to *give unto Isaac* the farm in Lower Freehold, and should Providence determine otherwise, that he the said Isaac should receive of his (the said John Rue's) estate one thousand dollars; and the breach alleged is that John Rue did not *by his last will and testament* give the said farm to Isaac, but that he gave and·devised it to Joseph Rue.

In the seventh count the agreement is described as in the sixth, and the breach alleged is that John Rue did not give the said farm to Isaac, but that he gave and devised it to Joseph Rue.

The cause was tried in the Circuit Court and a verdict rendered for the plaintiffs, subject to the opinion of the Court upon a case stated. As the cause was argued upon the validity of the agreement, and its admissibility in evidence under the pleadings filed, it is unnecessary to state the evidence farther than incorporated in the opinions of the Judges.

Before the CHIEF JUSTICE, and NEVIUS and CARPENTER, JJ.

Mr. *Field,* and *J. S. Green,* for defendants.

1. The contract was void for uncertainty under any state of the pleadings. *Chit. Contr.* 72, 73 (6th *Am. Ed.*); *Coles* v. *Hulme,* 8 *B. & C.* 573; *Abeel* v. *Radcliff,* 13 *John.* 297; *Figs* v. *Culer,* 3 *Stark. R.* 139.

An agreement which is required to be in writing by the statute of frauds must be certain in itself, and any defect cannot be supplied by parol. *Chit. Contr.* 107; 1 *Phil. Ev.* 772 (8th *Ed.*) Can the court say whether this was an engagement to sell, lease or devise? What is the contingency upon which he agreed to pay 1000 dollars?

2. But the agreement is not evidence under any of the counts, though it will be contended that it is evidence under the special counts.

It will not be pretended that it is evidence under the first count; and yet this is the only count which gives a consistent meaning to the contingency expressed by the words "should Providence determine otherwise."

In the 3rd and 6th no reference to the contingency on the face of the paper or representing it as an absolute engagement to *give* the other to *devise.* They represent this as an engagement to give a farm worth $7000 under the penalty of $1000. The contracts set out in the different counts are variant from each other; the result of the supposed agreement being without words necessary to make it intelligible and susceptible of construction.

*R. Adrain*, and *J. W. Scott*, contra.

1. Is the paper a contract at all? 2 *Bls. Com.* 442. There is no question as to the assent of the parties, or the sufficiency of the consideration. It is in regard to the thing to be done that the controversy arises. The intention is to be sought under the usual rules of construction, and the court will give effect to the intention if it can be found, although words neither apt nor usual have been employed. *Powell on Contr.* 242; *Plowd.* 140, 190; *Willes* 332.

The intention was that Isaac should have the farm—it is not now necessary to say how or when—but it is the intention stamped on the face of the agreement. The farm at some time, in some way upon a good consideration, was *engaged* to Isaac; and if that undertaking was not performed, there was a promise that he should have the 1000 dollars. If so, was he not entitled to recover upon the common counts? The word *engage* implies a consideration.

But the contract may be valid, and yet no time or manner specified. Upon a promise on a sufficient consideration that a farm shall be given, the law will imply that the contract shall be carried into effect in a reasonable time. 4 *Campb.* 426; 5 *Vin.* 189, *Tit. Condition; Shep. Touch.* 377.

2. But we must shew a particular intent consistent with the declaration. The circumstances and the situation of the parties may be looked at in the construction of a contract. *Greenl. Ev.* § 287. It was a father that engaged to a son a farm to which he had just removed. The time was the lifetime of that father which the latter had reserved to complete his contract, shewn by the phrase in regard to Providence. Providence to him was his life-time. The alternative would occur at the close of the life of John Rue.

As to the mode—devise or grant? It is evident that it was not a contract for a lease, for Isaac already had the beneficial use of the land. The word *engaged* as used between a father and a son, the latter having advanced to the former the 1000 dollars implies that the farm was to belong to the son; not the use of the farm for the year or two, but that he was to have the farm.

If the engagement was for a future time, at or before the death of John Rue, then it must necessarily be implied that it was to be carried out by will or deed, which were the only modes applicable. If this was what the parties meant and to be found alleged in substance in the declaration, it is sufficient.

It is immaterial whether a grant or devise; sufficient that it was an engagement that he would give him the farm in some mode. This is not an ordinary agreement for sale or purchase. Although in the shape of a contract, an absolute promise on a sufficient consideration, yet it was intended chiefly as a bounty: an act of kindness from father to son. It is evident that the bounty was intended at some future time; not to be done immediately, but at some future time within the life of the father, and from which he might withdraw upon the repayment of the money advanced. Hence the use of the words—"Should Providence determine otherwise;" and if from any reason he did not perform his promise the son should be repaid. The words "receive out of my estate" shows that he had during his life to perform. The promise binds his executor. Interpolation of words to make sense is of no consequence if we do not interpolate ideas.

"Otherwise" is the only material word and conveys the whole idea, that if engagement was not performed, after his decease, his estate should be liable for the money advanced. Unintelligible words will not vitiate a contract if they do not enter into its essence and it can be construed without them. 1 *Hill N. Y. Rep.* 520 ; 5 *B. & Adol.* 848.

GREEN, C. J. This was an action of assumpsit commenced in the Middlesex Circuit for the recovery of $1000 upon the following instrument of writing signed by John Rue, the defendant's testator :

"This to certify that I engage to my son Isaac the farm which he now lives, and should Providence determine otherwise, he is to receive of my estate one thousand dollars, five hundred dollars, for the improvements made on the farm on which my son Joseph lives, and five hundred for money to be paid to Sarah Rue, widow of my deceased son. September 27th, 1822.

(Signed)      JOHN RUE."

Upon the trial it appeared that John Rue, by whom the foregoing agreement was signed, was the owner of three farms, one in Upper Freehold, one in Lower Freehold and one in Monroe, his son Isaac the plaintiff's intestate, had lived four or five years upon the farm in Upper Freehold, and during that period had made permanent improvements upon the farm to the value of four or five hundred dollars.

In April, 1822, a few months before the date of the agreement, he removed to the farm in Lower Freehold, and his brother Joseph took possession of the farm in Upper Freehold, which had previously been occupied and improved by Isaac.

The farm in Lower Freehold had previously been occupied by John, another son of the testator, who died on the 25th of October, 1820, leaving a widow, Sarah Rue, subsequently to the date of the contract, Isaac Rue at the request of his father paid to Sarah his brother's widow $500.

John Rue, the defendant's testator, died on the 5th of October, 1843. His son Isaac died about two years before. Several years prior to his death, Isaac at the request of his father, removed from the farm in Lower Freehold, where he lived at the date of the agreement, to the farm in Monroe, and continued to reside there with his family until his death. Joseph removed to the farm in Upper Freehold, and occupied it at his father's death.

By his will the testator devised his farm in Lower Freehold to his son Joseph. His farm in Monroe, (excepting 108 acres) he devised to his son Isaac, charged with the payment of legacies to the amount of $7,000. It was further in evidence that the testator valued the homestead farm in Monroe at $12,000, and the Lower Freehold farm at $7,000, and that he had told Isaac that if he would remove to the farm in Monroe he should having it by paying $5,000.

Upon the trial a motion to overrule the contract declared upon as inadmissible evidence, and a further motion to nonsuit the plaintiff were overruled, and a verdict rendered for the plaintiff subject to the opinion of this court upon a case certified.

It is first insisted on the part of the defendant, that the instrument declared upon is unintelligible, insensible and void, and therefore that no action can be maintained upon it.

If the fact be as is alleged, that the instrument is unintelligible, the conclusion is irresistible that the action cannot be sustained.

Every contract, in order to be enforced, must be intelligible. It must express the intention of the parties with a reasonable degree of certainty. If the terms of the agreement be so vague or indefinite, or its provisions be so defective, that the intention of the parties cannot be ascertained, the contract is void for uncertainty. The same principle applies to all instruments.— *Chitty on Con.* 72–76 ; *Coles* v. *Hulme,* 8 *Barn & Cress* 568 ; *Figs* v. *Cutler,* 3 *Stark.* 139 ; 6 *Cruise Dig.* 170 § 35 ; 4 *Cruise* 298 § 30.

The courts however very reluctantly reject an agreement regularly and fairly made, as unintelligible or insensible. They will, if possible, give effect to the contract. If the meaning of the parties can be ascertained, either from the express terms of the instrument or by fair implication, and the purpose of the contract be lawful, the court will in all cases carry it into effect, and for this purpose words or phrases will be supplied, transposed, or rejected as surplusage. *Lloyd* v. *Say,* 10 *Mod,* 46 ; 1 *Bro. Par. Cas.* 379, *S. C. ; Langdon* v. *Goole,* 3 *Lev.* 21 ; *Coles* v. *Hulme,* 8 *B. & Cress.* 568 ; *Targus* v. *Puget,* 2 *Ves. Sen.* 194 ; *Worthington* v. *Hillyer,* 4 *Mass.* 196 ; *Sumner* v. *Williams,* 8 *Mass.* 183.

It is said by the defendant that it is impossible by any fair rule of construction to ascertain the meaning of the agreement declared upon, whether the agreement was for a lease, a sale, a gift or a devise of the farm, or upon what terms, for what period, or for what estate the conveyance was to be made, and that the meaning of the term or condition, ("should Providence determine otherwise,") upon which the sum of $1000 was to be paid, is equally indefinite and unintelligible.

But is there really any such ambiguity in the contract? Is not the plain and natural import of the agreement that the title to the farm which was owned by the father and upon which the son lived, should be vested in the son? The phrase " I engage to my son Isaac the farm on which he lives," is equivalent to saying " I promise him the farm," or I promise that he shall

have the farm, not a lease of the farm, not a part of it, not a qualified interest in it, but the farm itself. And if there should be any doubt upon this point upon the face of the instrument, that doubt I think is effectually removed by a recurrence to the subject matter of the contract, the situation of the parties, and the relation in which they stood to each other.

But admitting that some doubt or uncertainty may exist as to the meaning of this clause, can it in any wise affect the present action ? The object of this suit is not to enforce the specific performance of this branch of the contract, nor to recover damages for its breach. If it were, it would become material to ascertain with certainty the precise meaning of the clause. But whatever be its meaning, performance is not alleged. It is not pretended that the farm was ever leased, conveyed, or devised to Isaac. On the contrary it was shown that the farm was devised by John Rue to his son Joseph, by whom it was occupied before and at the time of the testator's death. The qualification annexed to this clause shows that the undertaking was not absolute, but that upon a failure to perform, the son was to receive from the estate of his father $1,000.

The contract is in the alternative, and admitting that the first clause of the contract is either unintelligible or inoperative, as it certainly is not obligatory, is not the alternative of the contract to pay the money perfectly clear, and founded upon good consideration ?

Suppose the contract to read thus : In consideration of improvements made by my son Isaac, to the value of $500, upon the farm occupied by my son Joseph, and of $500 to be paid by him to Sarah Rue, the widow of my deceased son, I promise him the farm where he now lives, or that he shall receive of my estate one thousand dollars.

This would be clearly a binding and valid contract, though there be no obligation to convey the land, and though it might be doubtful whether the farm was to be given by deed or by will, for life or in fee. This could in no wise affect the right to recover the money, if in point of fact the land was not given either by deed or by will. I am of opinion that there is no such ambiguity or uncertainty in this contract, as to affect the

plaintiff's right of action, much less to warrant the court in rejecting the entire contract as insensible and void.

The contract is declared upon in the seventh count of the declaration according to its legal effect. The objection, therefore, to the admissibility of the contract on the ground of variance between the allegation and proof, cannot prevail.

It is certainly a matter for grave consideration, whether from the lapse of time, the change of circumstances, and the disposition made by the testator of his estate, it may not fairly be presumed that the agreement has been satisfied. This, however, was a question of fact for the jury, and I am informed by my brother Nevius, before whom the cause was tried, that this question was upon the trial distinctly submitted to the jury for their consideration. It must therefore be considered as settled.

Upon the whole case I am of opinion that the contract was competent and admissible evidence, that the motion to nonsuit was properly refused, and that the plaintiff is entitled to judgment upon the verdict.

Let a rule be entered and certified to the Circuit Court of the county of Middlesex as the advisory opinion of this court, that the plaintiff is entitled to judgment upon the verdict.

NEVIUS, J. Two questions present themselves in this case for our consideration.

1st. Is the contract upon which the action is based, a valid and legal contract, or such an one as can be enforced in a court of law ? And

2d. If it is, can a recovery be had upon it under either of the counts in this declaration ?

The counsel for the defendant insist that this contract is not susceptible of any clear and definite construction and is void for uncertainty. If it is so uncertain and ambiguous that neither a general nor particular intent can be clearly gathered from it, the counsel are right, and the contract cannot be enforced. It is not objected to this contract, that the parties were incapable of contracting, or that it does not contain a sufficient and lawful consideration, or that it is void by reason of its being contrary to public policy, or against the provisions of any stat-

ute, or that it is founded in any fraud. Let us see, then, if there is not a general intent clearly to be discovered upon the face of this paper. It is a rule in the construction of contracts, that the situation of the parties, the subject matter of their transactions, and the whole language of their instruments are to be taken into consideration in determining the meaning of any particular sentence or provision, and extraneous evidence is admissible to aid the construction of a written instrument, so far as to ascertain the circumstances under which the writing was made, and the subject matter to be regulated by it. 8 *Mass. R.* 214—10 *Do.* 379, 459. Before this paper was offered in evidence, the plaintiffs, availing themselves of this rule, proved that John Rue was the owner of three farms, that he himself occupied the homestead, that his son John had occupied his farm in Lower Freehold, and had then recently died leaving a widow and no children. That Isaac, the plaintiff's intestate, occupied his farm in Upper Freehold, upon which he had made improvements to the value of $500. That his son Joseph had recently married in the neighborhood of the last mentioned farm, and desired to occupy that, and that Isaac was induced by his father to yield up the possession of this farm to his brother Joseph, and take possession of the farm in Lower Freehold, on which John had before lived. It was further shewn that these sons occupied these several farms free from rent, that neither had a title for them, and that the old man had frequently declared that his will should be his son's deed. Under these circumstances and in this situation of the parties, it was, that the paper in question was executed. Taking them into consideration, then, can it be doubted but that the general intent of John Rue, as expressed in this paper was, that he would in some way and at some time assure his Lower Freehold farm to his son Isaac, and on his failing to do so, that Isaac should be repaid out of his estate the money which he had expended in the improvement of the one farm, and that which he had paid to his sister-in-law. To my mind such general intent is clearly discernible on the face of this paper. Let us then consider whether the language used in the instrument is inconsistent with such general intent, or fails to convey that intent, or whether it fails so to particularise the

time and mode of executing such general intent, as to render the contract void for uncertainty. It is a known maxim in the law, that the construction of contracts shall be such as that the thing intended shall rather prevail than be lost. I need not cite authority for this. And that the court may supply words to carry out such intent, where it is manifest that they have been ignorantly, carelessly, or accidentally omitted. In the first clause of the contract therefore, the words " is " and " on " may and ought to be supplied, to perfect the sentence and convey the thought manifestly intended. These words being supplied, we have in this clause a promise of a particular farm to a particular person. One definition of the word engage is, " to bind by appointment or contract," and in common parlance it is often used as synonymous with the word promise. I engage to do or omit to do an act, is nothing more than a promise to do or omit it. To promise a farm to another, and that for a valuable consideration, imports an agreement that the party will in some way convey or assure it to such other. But it is said it does not appear what estate in the farm John Rue promised, whether for years, for life, or in fee. In answer it may be said that the promise extends to the whole thing promised, the whole estate which the promisor has in the thing, unless the promise is qualified by other words, or by other parts of the contract. Words are to be most strongly taken against him who uses them, and most favorably for him for whose benefit they are used. If a promise of a farm then means any interest which the owner has in it, it must be taken to mean the whole interest he has in it, if there be no other words to limit the promise to a lesser interest. But again it is said there is no mode specified in this contract in which this promise was to be executed. The form is wholly immaterial, it is the substance of the promise that is to be performed, and whether performed by deed of gift, by deed of bargain and sale for the consideration mentioned in the contract, or by devise in a last will and testament, in either case, it would be a performance: if done in neither way, it would be a breach of the promise. As the mode of assurance, therefore, is not essential to the validity of the contract, it was unnecessary to be expressed in it. And the contract is not void for such

omission. But it is further urged that there is no time specified in this contract when this assurance is to be made. It is true that no day is fixed for the performance of the promise, yet, if from the nature of the promise and the language of the contract, it can be clearly inferred that the promisor reserved the right to fulfill it, at any time during his life, then there is no uncertainty. The promise was a farm worth $7000 of which the promisee was then in possession, enjoying it without payment of rent, and the promisor had uniformly declared that his will should be his sons' title to their land, and he provides in the contract, that if he fails to make such assurance of the farm, his son shall receive (not from him, but) out of his estate $1000. This language clearly implies that in his own view, there would be no breach of the promise during his life, and consequently that he had his life-time to fulfill it. This is no forced or strained construction, but natural, reasonable and legal, and necessary to give full effect to the contract, and its general intent.

Again, it is objected that the words "should Providence determine otherwise," are without any definite meaning, and are unintelligible, and therefore the contract cannot be understood, and ought not to be enforced. To my mind these words are perfectly intelligible, and I apprehend they must be so to every plain minded man. This is the very language used by all men who are accustomed to advert to an overruling Providence in human affairs. What is more common than the expressions "I will do so and so at a future day, if my life is spared," or "if Providence permit," or "unless it shall be otherwise ordered and appointed." To say therefore that I will do a particular act at a future day, or if prevented by Providence I will do another act, or such a right shall accrue against me or my estate, is nothing more than to say, I will do the act, or if I fail to do it from any cause, that right shall accrue. Upon a view then of this whole paper, and the rules of construction applicable to it, I am of opinion that this contract is neither uncertain nor unintelligible, and is not void, but that a recovery may be had upon it. And if John Rue had died shortly after he executed this contract, without in any way having made assurance of this farm to Isaac, it seems to me no one would have questioned the right of the

latter to recover the amount of money mentioned in it, out of the estate of the former.

The next question for consideration is, whether a recovery can be had upon this contract under either of the counts in the declaration? And first as to the special counts. If the construction I have given to the contract be right, no recovery can be had upon it, under the first special count, for it is not set forth in that count according to its true tenor and effect. Nor do I think that the plaintiffs are more fortunate in their 2d special count. In each of these counts, the averment is that John Rue promised that he would by last will and testament give, (or leave) and devise, &c., and the breach in the second is that he did not by last will give and devise, &c., but devised the farm to another son. Now the contract did not limit him to an assurance of this farm to Isaac by will, he was at liberty to assure it in any other way, and the averment should not have been limited to a devise, nor the breach to not devising. The promisor might have fulfilled his engagement by conveying the title by deed of gift or bargain and sale, and the counts ought so to have averred and assigned the breach as broadly as the averments.

The 4th special count, which is the 7th count in the declaration, sets forth the agreement, as I apprehend, according to its true import and meaning. It avers the promise to be, that the promisor would give, &c., and assigns as a breach, that he did not give, &c. I think that under this count the recovery may be sustained.

Although not fully satisfied with the verdict upon the evidence in this case, I am of opinion that the law, on the questions reserved, is with the plaintiffs, and that the Circuit Court of Middlesex be advised by this Court to render judgment on that verdict.

CARPENTER, J. I cannot but think the agreement, viewed by the light of surrounding circumstances, is susceptible of an intelligible construction. Parol testimony is inadmissible to add to or vary the contract, but it may be adduced to shew the situation of the maker of the instrument and his relation to the

persons and things around him, when such evidence will aid in discovering the intention. Courts will not declare an agreement founded on a valuable consideration void for uncertainty, unless it be manifestly so, but will seek for and carry into effect the intention, if that intention be consistent with the rules of law.

John Rue, the defendant's testator, in his lifetime was the owner of two farms in the county of Monmouth, one in Upper and the other in Lower Freehold. Isaac Rue, the son, at the request of his father removed from the farm in Upper Freehold where he had previously lived, and on which he had expended in improvements the sum of five hundred dollars, to the other in Lower Freehold referred to in the contract. John Rue was not only indebted to his son in this sum so expended, but Isaac further agreed to pay at the request of his father the additional sum of five hundred dollars to the widow of a deceased brother. John Rue in consideration of the money expended upon the farm from which he had removed his son, and of the further sum about to be advanced, made and delivered to Isaac the writing upon which this action has been brought. John Rue survived his son Isaac, never made him or his heirs a title to this farm, and finally devised it to Joseph Rue, another son. The obvious intention of the father, which appears upon the writing, was that Isaac should have the farm. It was a father who was willing to assure a son against the inconvenience of a second removal. If so, the son was willing not only to relinquish the sum he had already expended, but to pay to the father or to his order the additional sum of five hundred dollars. Undoubtedly the promised gift of the farm was chiefly intended as a bounty from the father, but still there was a valuable consideration for the promise, not only in contemplation of law but also in point of fact. The father then under these circumstances and upon the consideration referred to, signed this agreement in which he promised that the son should have the farm. "I engage to my son Isaac the farm," &c. And that otherwise—"Should Providence determine otherwise"—he should be paid the one thousand dollars. A contract with condition to pay on the maker's default is valid, and payment may be enforced against his representatives after his death. Here the contract is, that if the

farm is not granted or given to Isaac, that he shall receive (be repaid) the one thousand dollars out of his estate. The liability therefore only became fixed on the death of John Rue, and of consequence he had during his lifetime to comply with his agreement. If in any way by gift or devise at or before the time of his death, he conveyed the title to Isaac, his engagement was fulfilled; if he failed, then Isaac became entitled to receive the one thousand dollars out of his estate. The language is neither apt nor usual, but I think it intelligible, and the written agreement a valid contract, binding on the estate of John Rue.

It only remains to inquire if the agreement was properly in evidence under either of the counts in the declaration of the plaintiffs. In one count the agreement is set out as a promise to give the farm to Isaac, or otherwise that Isaac should receive of his estate one thousand dollars; and the breach alleged is that the testator did not give the farm to Isaac, but that he gave and devised it to Joseph. In my judgment it was properly in evidence under this count, and I concur in the opinion that the Circuit Court should be advised to give judgment upon the verdict for the plaintiff.

Rule ordered that the Circuit Court be advised to give judgment upon verdict for plaintiff.